THE STATE EX REL. JONES, Respondent, vs. OATES, Appellant.

*December 2 — December 29, 1893.*

*Office and officer: Rights of person holding certificate of election:* De facto *officer: Proceeding to obtain possession:* Mandamus: *Practice: Immaterial error.*

1. One who has been declared by the proper canvassing board to have been elected to an office, and has received the proper certificate of election, and has duly qualified, has the *prima facie* right to the office and is entitled to possession thereof, when his term begins, as against every one except a *de facto* officer in possession under color of authority.

2. An officer who retains possession of the office after his term, claiming that he was in fact re-elected, but without other color of authority, is not a *de facto* officer as against the person who holds the certificate of election and has qualified.

3. *Mandamus* is the appropriate remedy in such a case to enforce the right of the person having the *prima facie* title to the office. The remedy under secs. 977, 983, R. S., by proceedings to compel delivery of books and papers, is not adequate, where possession of the seal of the office and the moneys appertaining thereto is also desired.

4. The fact that the person so retaining possession of the office and claiming to have been re-elected did receive the greater number of legal votes at the election cannot be pleaded as a defense in the *mandamus* proceedings as against the relator's *prima facie* title. The contest should be made on *quo warranto.*

5. An error in overruling an objection to an alternative writ of *mandamus* on the ground that it was signed by the judge instead of the clerk and was not under seal, is *held* not to affect any substantial right and hence not to be one for which the judgment awarding a peremptory writ should be reversed.

APPEAL from the Circuit Court for *Grant* County.

*Mandamus* to compel delivery of the moneys, records, books, papers, seals, and other property belonging to the office of the clerk of the circuit court for La Fayette county.

It appears by the relation that the relator and the appel-

lant were rival candidates for said office at the general election held November 8, 1892, the appellant then being the incumbent of said office; that the county canvassers decided that the relator received 2,343 votes, and the appellant 2,342 votes, and the county clerk thereupon issued to relator a certificate of election in due form of law; that relator duly qualified by giving the bond and taking the oath required by law; that his bond was duly approved and deposited with the register of deeds of said county; that on the 10th of January, 1893, he demanded of appellant possession of the moneys, records, books, papers, seals, and other property of the office, but that appellant refused to surrender them, and has ever since pretended, without right, to discharge the duties of said office and receive the fees thereof.

Upon this relation an alternative writ of *mandamus* issued out of the circuit court, to which appellant made return, admitting that the parties were rival candidates for said office at the general election in 1892. The return further substantially admitted the canvass of the votes, the issuance of the certificate to the relator, and the relator's qualification for the office, setting forth, however, some alleged defects in the canvass and the giving of the bond which are not regarded as of sufficient importance to state. The return then states as a defense that the appellant in fact received at such election 2,346 votes, and was elected by a majority of three votes; that four of the votes so cast for him at a certain precinct, though cast by legally qualified electors, were not counted for him by the inspectors, but were returned as defective, because they were indorsed by one ballot clerk only, instead of by both ballot clerks or by one ballot clerk and an inspector; that it was by the throwing out of these four votes that the relator's apparent majority was secured. The return further states that appellant duly qualified for the office by giving bond and

taking the oath of office, and claims that he has been and is now clerk of such court, and will continue to be such until the first Monday in January, 1895.

The relator demurred to the return as insufficient to constitute a defense or counterclaim, and the circuit court sustained such demurrer and ordered the issuance of the peremptory writ of *mandamus* as prayed in relation. *Oates* appeals.

For the appellant there was a brief by *Orton & Osborn* and *Wilson & Martin*, and oral argument by *P. A. Orton.*

For the respondent there was a brief by the *Attorney General* and *Murphy & Gardner*, and oral argument by *J. M. Murphy* and the *Attorney General.*

WINSLOW, J. It clearly appears by the statements of the relation and the expressed or implied admissions in the return that the relator was declared elected to the office of clerk of the circuit court of La Fayette county by the county board of canvassers of that county; that he received the proper certificate of election to that office; and that he qualified therefor as required by law; also that the defendant was the former incumbent of the office, and has retained possession of the same after the expiration of his term without certificate, commission, or other semblance of authority or right, but he claims that he can show that he in fact received the greater number of votes for the office.

The question first presented is, What effect is to be given to the canvass and certificate of election? Is the canvass a mere exercise in addition, to ascertain which column of figures is the greater? Is the certificate only a trophy given to the victor in the electoral battle, which is good for nothing except to exhibit to admiring friends or hang upon the wall as an evidence of political prowess? If these questions are to be answered in the affirmative, then the canvass and the issuance of the certificate are evidently as

The State ex rel. Jones vs. Oates.

useless as they are harmless. We think, however, that there is a substantial right conferred by the canvass on the person declared to be elected, of which right the certificate is the legal evidence. The canvass is for a purpose. It is to determine who was elected to the office. It is conducted by a tribunal created by the law to ascertain and decide that very question, and its determination must have some effect. Now, the effect which it has plainly must·be to determine who is elected to the office. Not necessarily to determine the fact permanently or beyond the possibility of revision or reversal, but to determine the fact for the time being and until a different result be reached in a proper proceeding to contest the title of the certificate holder to the office. As against any intruder in the office, and in fact as against all the world except a *de facto* officer in possession of the office under color of authority, the fact is settled by the determination of the canvassers until, in a proper proceeding, that determination is reversed. This doctrine is in accordance with the uniform current of authority. McCrary, Elect. §§ 204–221, and cases cited; Merrill, Mand. § 142.

A moment's reflection will convince any mind that this is not only a reasonable doctrine, but the only doctrine which can be tolerated. There will arise many disputed elections. It may sometimes consume much time to determine finally and conclusively who was elected. In the mean time the public welfare imperatively demands that the office be occupied by some one empowered to discharge its duties. Who shall it be? Shall it be the man who bears the certificate and has in his favor the adjudication of the tribunal created by law to primarily decide that question, or shall it be by an intruder, with no color of authority, with neither certificate or commission of any kind, who, by accident being in possession of the office, says that he was in fact elected thereto? There can be but one reasonable answer to this question. Plainly, the man with the certifi-

cate and the canvass in his favor must be admitted to the office, until a competent tribunal reverses the decision of the canvassers.    Any other doctrine would be subversive of all law and order.    The prior incumbent could as well turn over the possession of the office to another defeated candidate, on the pretense that he knew this other candidate was really elected, as to hold possession himself.  Thus, the prior incumbent would become the judge of the *prima facie* title to the office, instead of the canvassing board. The opportunities thus afforded to defeated candidates to temporarily thwart the will of the people need only be suggested; they need not be dwelt upon.

It seems very clear to us that the power to decide the *prima facie* right to an office lies with the canvassing board.

This *prima facie* right, if it means anything, must mean that the person having it has the right to the possession of the office and its books, papers, and other property, when his term of office begins, if he has duly qualified.    To this, we think, there is but one exception, and that is when the office is already filled by a *de facto* officer.    There has been much discussion as to what will constitute a *de facto* officer.    It is not material here to consider who may be a *de facto* officer as to third persons and the public in general. The question is, Who is a *de facto* officer, as against the person holding a certificate of election, who has duly qualified as required by law?    On this question the law is well settled.    A *de facto* officer is one who is in possession of an office and discharging its duties under color of authority.    McCrary, Elect. (3d ed.), § 218; 2 Dill. Mun. Corp. § 892.    By color of authority is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer. McCrary, Elect. § 218.    Tested by this rule, it is apparent that the defendant is in no proper sense a *de facto* officer as against the relator.    There has been no canvass or deter-

mination by any one in his favor, nor has he any certificate, commission, or authority from any person, officer, or board purporting to authorize him to discharge the duties of the office.

The defendant not being a *de facto* officer, it was his duty to surrender to the relator the property of the office at the commencement of the relator's term. Such a surrender would have been simply a recognition of the relator's *prima facie* title to the office under the canvass and certificate. It would not have affected any right the defendant might have to contest the election of relator in a proper proceeding. If it was the right of relator to be admitted to the office under his *prima facie* title, and hold it pending a contest, it is evident that the right may be enforced by *mandamus.* Blackstone says the writ issues in "all cases where a party hath a right to have a thing done, and hath no other specific means of compelling its performance." 3 Bl. Comm. 110. The authorities are numerous that *mandamus* is the appropriate remedy in such a case. Merrill, Mand. §§ 142, 143; *People ex rel. Cummings v. Head,* 25 Ill. 325; *Crowell v. Lambert,* 10 Minn. 369; *State ex rel. Atherton v. Sherwood,* 15 Minn. 221; *State ex. rel. Biggs v. Churchill,* 15 Minn. 455; *State ex rel. Meckling v. Jaynes,* 19 Neb. 161.

. It is said that the relator has an adequate remedy, under the statute, by proceedings to compel the delivery of books and papers. R. S. secs. 977, 983. It is quite evident that these statutory provisions afford no adequate remedy to the relator. They provide only for the delivery of books and papers. In the present case the seal of office and the moneys appertaining thereto are also desired, and neither could be obtained by a proceeding under the statute. We think the statutory proceeding inadequate.

Having held that the relator had a clear right to the possession of the office and its property under his *prima facie* title, and that *mandamus* is the appropriate remedy to en-

force that right, the case is practically disposed of. The relator's right to possession under his *prima facie* title is not affected by the fact that defendant may be able in *quo warranto* proceedings to successfully contest relator's *prima facie* title. Pending such contest, as we have seen, the relator's right to possession is perfect as against every one except a *de facto* officer holding under color of authority; and defendant is not such an officer. This makes it very plain that the defendant's allegations tending to show that he received the greater number of legal votes at the election were not pleadable as a defense to this *mandamus* proceeding; hence we express no opinion on the question whether the four votes which lacked the signature of one ballot clerk were in fact legal votes or not. It is a most interesting question, and by no means free from doubt, but it cannot properly be decided here.

Judgment for the relator in these *mandamus* proceedings does not determine the final rights of the parties; it simply determines that relator had a right to immediate possession under his *prima facie* title. It might perhaps determine the final right had both parties chosen to litigate it in this proceeding, but the relator has not chosen to litigate it, but has, by demurrer, challenged the sufficiency of the return. *Mandamus* is not the proper proceeding in which to contest an election. *State ex rel. Mercer v. Sullivan*, 83 Wis. 416.

It appears that the alternative writ in this case was defective in that it was signed by the circuit judge instead of the clerk of court, and it did not bear the seal of the court. The objection was duly taken by motion, but overruled. The alternative writ is, however, little more, in legal effect, than an order to show cause. *People v. New York Common Pleas*, 13 Wend. 649–655, note. Strictly, probably the objection should have been sustained, but we do not re-

The State ex rel. Jones vs. Oates.

gard the error as affecting any substantial right, and shall not reverse the judgment on that account. R. S. sec. 2829.

The questions involved in this case were very fully discussed by the late Mr. Justice TAYLOR in the case of *Supervisors v. O'Malley*, 46 Wis. 35, and the conclusions there stated are identical with the conclusions reached in this opinion, and stated, perhaps, with greater force and perspicuity. Inasmuch, however, as that case was not a contest between the parties claiming the office, and these questions were only collaterally involved, we have deemed it proper to review the question as an original one.

*By the Court.*— Judgment affirmed.