DEUSTER, Appellant, vs. ZILLMER, Sheriff, Respondent.

*October 1—October 20, 1903.*

(1, 2) *Appealable order: Special proceedings: Entitling papers.* (3, 4) *Justices' courts: Judgments: Vacation in circuit court on motion: Officers de facto.*

1. Pending an appeal from a justice's judgment to the superior court, the latter court, upon motion of the appellant, made an order vacating the judgment. The motion papers and order were entitled in the action. *Held,* that the order was nevertheless one made in a special proceeding, and, being a final order affecting, at least, the substantial right to have a transcript of the judgment docketed, was appealable under subd. 2, sec. 3069, Stats. 1898.

2. Many special proceedings springing out of a pending action may properly be entitled in the action.

3. A circuit or superior court has no power to vacate a justice's judgment upon mere motion.

4. M. and H. were duly elected and qualified as justices of the peace, for the term of two years and until their successors should be elected and qualify. They were the only justices in the town, although it was entitled to four. At the next election H. was re-elected and three new justices were elected, none of them being designated on the ballots as the successor of M. One of the three new justices, whose residence was nearest to M., failed to qualify; and M., claiming for that reason to be entitled to hold over under his previous election, continued to act as a justice. *Held,* that he was a justice *de facto,* whose right to the office could not be questioned in a mere collateral proceeding.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

This is an appeal from an order vacating a judgment of an acting justice of the peace. The records show that on July 7, 1902, the appellant commenced a replevin action against the respondent before one James McIver, who was then acting as a justice of the peace in the town of Lake, Milwaukee county, and that appellant obtained judgment for the goods replevied, valued at $113.55, and for $76 damages and costs, July 10, 1902, from which judgment the respondent duly appealed to the superior court of Milwaukee county July 11, 1902, and the justice made his return upon such appeal August 18, 1902. After the filing of this return the respondent made a motion in the superior court to vacate and set aside the judgment of the justice, which motion was based upon the records and files in the case, and upon affidavits of the respondent and one Anton Haertl. The respondent's affidavit was simply to the effect that he was the sheriff of Milwaukee county, and that the judgment aforesaid was rendered against him as such sheriff. The material parts of Haertl's affidavit were as follows:

"I. That he was duly elected as one of the justices of the peace in the town of Lake, Milwaukee county, Wisconsin, on the 1st day of April, A. D. 1902; that he subsequently duly qualified for said office, and that he was duly declared elected by the proper authorities—all of which James McIver, Esq., his predecessor in office, had due notice.

"II. That the term of James McIver, Esq., expired on the 5th day of May, A. D. 1902; that said James McIver, Esq., was not re-elected, nor was he holding under any appointment, subsequent to said 5th day of May, A. D. 1902.

"III. That on the 6th day of May, 1902, deponent, having duly qualified for said office of the justice of the peace, duly demanded of said James McIver, Esq., as his successor to said office, the books and papers appertaining thereto.

"IV. That said James McIver refused to deliver to this deponent said books and papers, but for some time thereafter, and until he was ordered by the circuit court in and for Milwaukee county to deliver to this deponent all records, books, papers, and other property belonging to said office, which order was dated the 12th day of August, A. D. 1902, the said James McIver continued to act as said justice of the peace, although without any authority so to do by virtue of any election or appointment.

"V. That proceedings were finally commenced in the circuit court for Milwaukee county entitled, 'In the Matter of the Books and Papers Appertaining to the Office of the Justice of the Peace, Town of Lake, Milwaukee County, Wisconsin;' that the matter was fully heard before the Honorable LAWRENCE W. HALSEY, Circuit Judge, and resulted in a court order, dated August 12, A. D. 1902, directing that said James McIver turn over to this deponent, as his successor, all books and papers in his possession as justice of the peace of said town of Lake, or in any way appertaining thereto, forthwith, upon service upon him of a copy of said order and that in default thereof said James McIver be declared in contempt of said order."

Upon the hearing of this motion the appellant appeared and filed the affidavit of James McIver, which had been used in the previous proceeding referred to in Haertl's affidavit, and reads as follows:

"James McIver, being first duly sworn, upon oath deposes and says that he is James McIver, justice of the peace of the town of Lake aforesaid, mentioned in the order to show cause herein; that, in answer to the said order to show cause, this affiant states that at the time of the annual election held in the town of Lake, Milwaukee county, Wisconsin, in the year 1900, and for many years prior thereto, this affiant was a resident and elector of the said town of Lake; that at the annual town election held in the town of Lake, Milwaukee county, Wisconsin, in the year 1900, affiant was duly elected a jus-

tice of the peace for said town aforesaid; that he duly quali-
fied as such justice, according to law, by taking and subscrib-
ing the oath of office prescribed in section 809, Revised Stat-
utes of Wisconsin, before a competent officer, and filed the
same with the clerk of the circuit court for Milwaukee
county, and by executing and filing with said clerk a bond,
with two sureties, who were approved by the chairman and
supervisors, as is provided by sec. 846, R. S. 1898; that he
has ever since and is still acting as such justice of the peace
in the town of Lake, by virtue of said election and qualifica-
tion aforesaid.

"Affiant further says that prior to the election held in the
town of Lake on the 1st day of April, 1902, there were in said
town but two justices of the peace, to wit, James P. Howard
and this affiant; that at the annual election held in the town
of Lake on the 1st day of April, 1902, James P. Howard,
Anton Haertl, George Voelker, and David H. Donna were
elected justices of the peace of said town; that, as affiant is
informed and believes, James P. Howard, Anton Haertl, and
George Voelker qualified for said office; that the said David
H. Donna, who was the nearest justice of the peace elected
to this affiant, refused to qualify for the office of justice of
the peace; that under the rule in force in the said town of
Lake, and the construction placed upon the law by universal
custom throughout the state of Wisconsin, and by the law de-
partment of the state of Wisconsin, as affiant is informed
and believes, for more than a period of thirty years last past,
the person residing in territory nearest to the justice in office,
and who is elected over the incumbent in office, has been held
to be the successor of such incumbent, and has been given the
books and records of the office upon demand, when qualified,
and when the nearest person failed to qualify according to
law the incumbent held over, under section 15, article VII
of the constitution of the state of Wisconsin; that David H.
Donna being the nearest justice of the peace elected to this
affiant, and he having failed to qualify as required by law,
and under the practice and custom prevailing in the town of
Lake and throughout this state for more than a period of
thirty years last past, the said David H. Donna was the suc-
cessor to the said affiant; and, said Donna having failed to
qualify, the said affiant is advised and believes that he has

the right to hold over, under section 15, article VII of the constitution of the state of Wisconsin; and said affiant denies, upon information and belief, that the said Anton Haertl, of the town of Lake, is the successor to said affiant, and denies that he is entitled to the books, papers, and records pertaining to the office of justice of the peace, now held by this affiant.

"Affiant admits that on or about the 6th day of May, 1902, Anton Haertl made a demand upon this affiant for the books, papers, and records of the office of the justice of the peace, so held by this affiant; that said Haertl then and there states that he believed he had no right to demand or receive the books, papers, and records of the office of the justice of the peace, held by this affiant, but that he made the demand because the chairman of the town directed him to do so. Affiant admits that he refused to deliver said books, papers, and records to said Haertl, and then and there informed him that the chairman of the town had no authority in law to determine which of the four persons elected justices of the peace was elected as successor to this affiant, and said affiant still denies that said chairman had any such authority.

"Affiant further states that he is informed and believes that M. J. McNamara, the person named as being appointed justice of the peace in the town of Lake to fill a vacancy, derived no authority whatever by virtue of such appointment, and is not a justice of the peace of said town; that at the time of the said pretended appointment the board of supervisors of the town of Lake had no authority in law to make any such appointment, there being then no vacancies in the office of the justice of the peace of said town; that there were then four justices of the peace in said town, duly elected and qualified and acting as justices of the peace, to wit, James P. Howard, George Voelker, Anton Haertl, and this affiant, James McIver."

After hearing the motion the court, November 29, 1902, made an order vacating and setting aside the judgment of the justice, from which order this appeal is taken.

For the appellant there was a brief by *Julius E. Roehr,* and oral argument by *L. A. Brunckhorst.*

For the respondent the cause was submitted on the brief of *Durant, Price & Cowen.*

WINSLOW, J.   The first question to be considered is whether the order appealed from is in fact appealable.   If appealable, it can only be under the first or second subdivision of sec. 3069, Stats. 1898, which provide for appeals from the following orders:

"1. An order affecting a substantial right made in any action when such order in effect determines the action and prevents a judgment from which an appeal might be taken.

"2. A final order affecting a substantial right made in special proceedings or upon a summary application in an action after judgment."

If the order in question be an order made in the replevin action itself, then clearly it is not appealable.   While it doubtless affected a substantial right, it was not made upon summary application after judgment; nor did it in effect determine the action, nor prevent judgment therein.   All this seems self-evident.   The judgment appealed from exceeded $15, exclusive of costs; hence the case was triable as if originally brought in the appellate court, and the mere fact that an order had been made purporting to vacate the judgment appealed from would not prevent the entry of a judgment in the appellate court.   Stats. 1898, sec. 3768.   Hence, in order to be appealable at all, it must be because it is a final order made in a special proceeding.   While the question is not without some difficulty, we have concluded that it must be considered as an order made in a special proceeding.   While all the papers on which the motion was founded, as well as the order itself, are properly entitled in the action, this fact is not at all conclusive.   There may doubtless be many proceedings springing out of a pending action—such, for instance, as an application by one not a party to be allowed to interplead— which may very properly be entitled in the action, but are

none the less true special proceedings. *Carney v. Gleissner,* 62 Wis. 493, 22 N. W. 735. Our statute, after defining an action, declares that "every other remedy is a special proceeding." Stats. 1898, secs. 2595, 2596. This proceeding was certainly not an action of itself. It did not relate properly or necessarily to the disposal of the case on the appeal, because appellate jurisdiction was simply to dismiss or to try the appeal as an action originally brought in that court; hence it was not properly a proceeding in the action, but it was a proceeding of some kind, which sought and obtained a remedy. We see no course open, therefore, but to regard it as a special proceeding, ill-advised and erroneous doubtless, but nevertheless a special proceeding, within the meaning of the statute; and we are the more inclined to adopt this view from the fact that the parties and the trial court seem to have so considered it without objection. Viewing it as such, there can be no doubt of the appealability of the order, because it was final in the proceeding and affected a very substantial right. The justice's judgment was not affected by the appeal itself. It is true that the giving of an undertaking under sec. 3756, Stats. 1898, as was done in this case, stays the execution of the judgment; but, even when the undertaking is given, the judgment remains of force, and a transcript may be docketed pending the appeal. *Steckmesser v. Graham,* 10 Wis. 37; sec. 3669, Stats. 1898. So the making of an order vacating the judgment affected a substantial right.

We have not been referred to any authority which holds that a justice's judgment may be vacated upon mere motion made in an appellate court, even though that court has superintending control or supervisory jurisdiction, and we should be surprised to find any such authority in the absence of a statute to that effect. A court has power to amend or control its own records in a proper case by motion, but this principle has not, to our knowledge, been carried so far as to hold that it may amend, vacate, or expunge the records of another court

in that manner, even though such other court be an inferior court over which it has superintending control. This power of superintending control is to be exercised by the established writs of the common law, at least until the legislature shall provide additional or other means. *State ex rel. Fourth Nat. Bank v. Johnson,* 103 Wis. 591, 79 N. W. 1081. That the circuit court has no power to set aside the judgment of a justice on mere motion was strongly intimated, if not actually decided, in the case of *Mabbett v. Vick,* 53 Wis. 158, 10 N. W. 84.

But if it were to be conceded that the power existed, or that the appellant, by appearing and failing to object to the proceeding, is now estopped from making any objection to the procedure, still the order was erroneous, because the facts before the court showed that the judgment was rendered by a *de facto* officer. It appears that McIver was duly elected and qualified as a justice in April, 1900. By the terms of the constitution his term extended for two years and until his successor in office should be elected and qualified. Const. art. VII, sec. 15. There were but two justices of the peace in the town of Lake prior to the election in April, 1902, McIver being one of them, and one Howard the other. The town was entitled to four justices, and four persons were elected at the last named election, one being Howard. Of the three newly elected justices, one failed to qualify; being the justice whose residence was nearest that of McIver. In this situation, McIver claimed that no successor had been elected to fill his place, and the question was certainly a debatable one. It did not appear that any of the persons elected had been designated on the ballot as the successor of McIver. Under these circumstances, McIver claimed to hold over under his previous election, and kept the books and records, and continued to do business as a justice, and, while that situation continued unchanged, rendered the judgment appealed from. It must be held that these facts fulfilled every requirement necessary to

constitute a *de facto* officer, so far as the public and those doing business before him were concerned. There was an office *de jure*. McIver was in possession under color of an election to that office. His right to hold it cannot be inquired into in a mere collateral proceeding. *In re Boyle,* 9 Wis. 264; *State ex rel. Knowlton v. Williams,* 5 Wis. 308. The cases of *State ex rel. Jones v. Oates,* 86 Wis. 634, 57 N. W. 296, and *La Pointe v. O'Malley,* 46 Wis. 35, 50 N. W. 521, are entirely inapplicable, because in those cases the question was simply as to the rights of one holding over in an office in a contest between himself and a person who had been declared duly elected to that identical office as his successor. Such cases involve very different considerations, and are controlled by different principles.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.