**Walter Clyde WHITE, b/n/f Jean SWAFFORD, Plaintiff–Appellant,**

v.

**Gary W. GERBITZ, District Attorney General for the 11th Judicial District of Tennessee, and his assistants, Larry Campbell, Stan Lanzo, and Paul Herrell, Defendants,**

and

**The City of Chattanooga, a municipal corporation, individually and by virtue of the acts of the agents or officers Steve Angel, George Dotson, Connie C. King, and Russell Bean, Defendants–Appellees.**

Nos. 88–6389, 89–5059.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1989.

Decided Dec. 20, 1989.

John R. Meldorf, III (argued), Meldorf & Young, Hixson, Tenn., for plaintiff-appellant.

William S. Parker, Jr. (argued), Randall L. Nelson, Chattanooga, Tenn., for defendants-appellees.

Before KEITH, JONES and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Alleging numerous errors, plaintiff, Walter Clyde White, appeals the district court's grant of summary judgment to defendants, the City of Chattanooga, Tennessee; Detective Steve Angel; City Court Clerk George A. Dotson; Deputy City Court Clerk Connie C. King; and Special City Judge Russell Bean (hereinafter collectively referred to as city defendants), in his civil rights action brought pursuant to 42 U.S.C. § 1983. Having determined that summary judgment was properly awarded for the city defendants, we affirm the district court's judgment.

White's civil rights claims stem from his 288-day detention as a material witness to a murder. On October 11, 1984, Francis Willard Smith was murdered behind a building in Chattanooga, Tennessee. Detective Steve Angel arrived at the scene where he encountered Gregory Denson and Charles Cathey. Denson and Cathey claimed to have been jumped and robbed by some black men. Smith's stabbed and beaten body was discovered by another officer. Plaintiff, who is an admitted alcoholic of longstanding duration, was observed intoxicated and sleeping approximately fifteen to twenty feet from Smith's body. Detective Angel, concluding that White possibly had committed or witnessed the murder, ordered him transported to a Chattanooga police station for questioning.

Angel interviewed White for about twenty minutes before taking his statement. During that time, Angel observed blood on White's clothing and recalled that he had been lying amidst a pool of blood on the loading dock where Smith's body was discovered. White told Angel that he was homeless and that he lived on the street. Before he gave his recorded statement, White informed Angel that he did not want to be a "snitch" and did not want to testify about the incident in later court proceedings. With that proviso, White proceeded to tell Angel about the altercation between Denson and Smith that culminated in Denson assaulting Smith with a nearby two-by-four piece of wood.

Angel subsequently decided to charge Denson with Smith's murder and to take White into custody as a "state's witness" to assure his testimony at trial. Both men were taken to the city jail where Angel swore out an "affidavit of complaint" against them before Deputy City Court Clerk Connie King. King signed the affidavit. This procedure is employed, pursuant to Rule 5 of the Tennessee Rules of Criminal Procedure, when a defendant is taken into custody without a warrant. White arrived at the city jail at approximately 5:00 a.m. on October 12, 1984. Later that day, at approximately 5:00 p.m., White, along with Denson, appeared before City Court Judge William Cox, who set bond for White at $500. Neither Detective Angel, the prosecuting attorney, nor any witnesses attended this initial bond hearing. White claims to have been told that he did not need an attorney. Unable to post bond, White was taken to the county jail pending a preliminary hearing.

On October 18, 1984, a preliminary hearing was held before Special City Judge Russell Bean in the Chattanooga City Court. Again, White was not represented by counsel at the hearing. Bean, a local attorney, had been selected to fill temporarily a vacancy of the regularly elected municipal judge position. At that hearing, Denson was bound over to the Hamilton County Grand Jury on the murder charge and White was "bound over" to the same grand jury as a material witness to the murder. Special Judge Bean set White's bond at $1,500 and denied White's request to sign his own bond. Still unable to post bond, White remained incarcerated at the county jail.

In February 1985, Denson's attorney inquired about White's continued incarceration, which prompted the court to instruct defense and prosecution attorneys to work together to release White. Two weeks later, when Denson's attorney inquired about White's continued incarceration, the prosecutor told him that if he would prepare an order requesting White's release, the prosecutor would present it to the court. White remained incarcerated until June 27, 1985, when he finally was released pursuant to a court order. Although White fulfilled his promise to appear in court on July 2, 1985, the indictment against Denson was dismissed at the prosecutor's request.

White subsequently brought suit against the city defendants and against Attorney General Gary W. Gerbitz, three assistant attorneys, and the sheriff, alleging violations of his civil rights. The defendants' motions to dismiss, supplemented by various pleadings, affidavits, and depositions, were treated as motions for summary judgment. The motions of the city defendants and the sheriff were granted but the motion of the attorney general and his assistants was denied. Subsequent to the court's denial of various motions to alter or amend the judgment or to reconsider, the plaintiff filed notices of appeal as to the city defendants. This appeal was dismissed as premature because the matter had not been resolved as to all of the named defendants. After the case against the attorney general and his assistants was conditionally dismissed, *see White v. Gerbitz,* 860 F.2d 661 (6th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1160, 103 L.Ed.2d 219 (1989), plaintiff renewed his appeal of the summary judgment awarded to the city defendants. Our review is limited to that issue.

## I.

In reviewing the propriety of the district court's grant of summary judgment for the

city defendants, we are mindful of the teachings of *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* at 322–23, 106 S.Ct. at 2552 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

White's action was brought pursuant to 42 U.S.C. § 1983 and included several pendent state law claims. We shall address the numerous issues before us in connection with the appropriate named defendant(s).

White first alleges violations of his state law rights and his federal due process rights because of Detective Angel's role in arresting and detaining him for a minimum of six and one-half days without advising him of his rights and without taking him before a neutral magistrate. White also claims that he was subjected to an unlawful seizure and cruel and inhumane treatment. According to White, his bond hearing did not cure his constitutionally defective arrest. In assessing these claims, the district court first considered whether Tennessee law authorized Angel to arrest White as a material witness. Once the court determined that such authority existed, it proceeded to consider whether Angel had probable cause to arrest White as a material witness.

Although Tennessee cases have alluded to the arrest of material witnesses,[1] apparently none has considered whether Tennessee law explicitly authorizes a police officer to arrest and detain a material witness to a crime without first obtaining a warrant. Therefore, the district court had to determine whether Angel's conduct violated state law based on its prediction of how the Tennessee Supreme Court would resolve the issue. Tennessee Code Annotated § 40–11–110, which was enacted in 1978, provides:

> **Bail for material witness.**—If it appears by affidavit that the testimony of a person is material in any criminal proceedings and if it is shown that the witness has refused or will refuse to respond to process, the court may require him to give bail under § 40–11–117 or § 40–11–122 for his appearance as a witness, in an amount fixed by the court. If the person fails to give bail, the court may commit him to the custody of the sheriff pending final disposition of the proceeding in which the testimony is needed, may order his release if he has been detained for an unreasonable length of time, and may modify at any time the requirement as to bail. If the person does not comply with the conditions of the bail bond, the court having jurisdiction shall enter an order declaring the bail to be forfeited as provided in § 40–11–120 or § 40–11–139.

The district court properly recognized that this statute inherently contemplates that material witnesses are subject to arrest and detention under appropriate circumstances. Such an interpretation is necessary to effectuate the statutory authority given to courts to impose bail on material witnesses. Accordingly, we agree that Tennessee would authorize the warrantless arrest of material witnesses when the arrests are supported by probable cause.[2]

---

1. *Tennessee v. Cannon*, 661 S.W.2d 893, 897 (Tenn.Crim.App.1983); *see, e.g., Tennessee v. Voltz*, 626 S.W.2d 291 (Tenn.Crim.App.1981). Other states have expressly recognized the validity of a warrantless arrest of a material witness. *See, e.g., State v. Hand*, 101 N.J.Super. 43, 242 A.2d 888 (1968).

2. The Supreme Court, noting N.Y.Code Crim.P. § 618–b and Fed.R.Crim.P. 46(b), has acknowledged that "[t]he duty to disclose knowledge of crime ... is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness." *Stein v. New York*,

■ Before determining whether Detective Angel's arrest of White was supported by probable cause, we note that White, relying on *Arrowood v. State*, 2 Shannon's Cases 347 (Tenn.1877), urges that section 40–11–110 did not authorize his detention on the basis of his inability to make bond. When *Arrowood* was decided, section 40–11–110 did not exist and no other Tennessee statute authorized incarceration of material witnesses who were unable to post bond. Accordingly, the *Arrowood* court determined that such a witness must be discharged upon his own personal promise to appear because the witness had not acted in contempt so as to warrant his incarceration. The district court determined that the authority relied upon to detain a material witness in *Arrowood* was a statute authorizing a magistrate to imprison a witness for failing or refusing to post bond to assure his future testimony. The court further determined that section 40–11–110 is consistent with those earlier statutory provisions and that Judges Bean and Cox acted contrary to the principles of *Arrowood* by detaining White without making findings relative to his likelihood of appearing at Denson's trial. Nevertheless, the court also correctly recognized that even though White's detention may have violated state law, the violation, without more, was not a constitutional violation for purposes of section 1983. *See, e.g., Clark v. Link*, 855 F.2d 156 (4th Cir.1988) (mere violation of state law does not necessarily give rise to section 1983 claim). To make out a section 1983 claim, White must establish that a defendant violated his *federally* protected rights under color of state law. In this case, the court properly concluded that the judges' unfaithfulness to *Arrow-*

*wood* did not support a section 1983 claim against Angel.

■ We find that section 40–11–110 not only authorized White's arrest and detention, but that the warrantless arrest was supported by probable cause. White was a material witness to Smith's murder, he was unable to make bond and, although the district court cites the lack of court findings or consideration of the issue, the record indicates that White's reticence to "snitch" or to otherwise testify against Denson made it reasonably unlikely that he would appear at the suspect's trial. This is all that is required by section 40–11–110. *Arrowood* is distinguishable from the present case because in *Arrowood*, no evidence suggested that the witness had intimated that he would fail to appear in court to testify. Therefore, his detention was based solely on his inability to post bond. In this case, White's comments and his inability to post a low bond, together with his homelessness and alcoholism, offered ample grounds within the meaning of section 40–11–110 to arrest and detain him. Within twenty-four hours of his arrest, White was brought before Judge Cox. At that time he had the opportunity to post bond and to be heard but he was no longer under Angel's control. Likewise, Angel had no control over (and was not even present at) the bond proceedings. We conclude that White's section 1983 claim against Angel for his role in arresting White and in White's subsequent detention is without merit.[3]

## II.

■ White next argues that the City of Chattanooga is somehow liable for his

---

346 U.S. 156, 184, 73 S.Ct. 1077, 1092, 97 L.Ed. 1522 (1953) (footnote omitted).

**3.** Alternatively, we note that even if Angel's arrest and detention of White violated White's civil rights, Angel would be entitled to qualified immunity because his conduct did not violate clearly established state law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (relieving government officials of liability for civil damages for performing discretionary functions in a manner that does not "violate clearly established statu-

tory or constitutional rights of which a reasonable person would have known."); *see also Barts v. Joyner*, 865 F.2d 1187 (11th Cir.1989) (pertinent law governing permissible detention of suspect/witness to recent homicide was ambiguous). Although we agree that, if confronted by the issue, Tennessee courts would recognize the authority to arrest and detain a material witness, the current state of the law on this issue is not sufficiently established to have put Detective Angel on notice that he was violating clearly established constitutional or statutory rights.

improper arrest and detention by Detective Angel. Respondeat superior is not a basis for imposing liability on local governments. *Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir.1988). For the city to be liable, White must allege and demonstrate that it adhered to a policy or custom violative of his rights. *Id.* White claims that the acts of an elected commissioner who heads the fire and police department represent official policy and render the city liable for Angel's acts because of the city's acquiescence or implicit authorization of Angel's unconstitutional conduct. We conclude that White has not identified or demonstrated that the city adhered to a policy vis-a-vis the handling of material witnesses that is violative of his rights. The lack of a clear city policy governing material witnesses is not tantamount to a policy violative of White's constitutional rights.[4] White's claim that such a policy existed is undermined by our determination that Angel's conduct did not violate White's civil rights. We conclude that summary judgment properly was granted for the city because White did not meet his burden of proof.

## III.

White next challenges the district court's finding that Special City Judge Bean, City Court Clerk Dotson, and Deputy Court Clerk Connie King are immune from his claims.

In *King v. Love*, 766 F.2d 962 (6th Cir.), *cert. denied*, 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985), we reviewed principles of judicial immunity. We stated that "[p]rovided that they do not engage in non-judicial acts or act in the clear absence of all jurisdiction, judges presiding over courts of general jurisdiction are absolutely immune from suits for damages...." *Id.* at 965. We held that "judges of courts of limited jurisdiction are entitled to absolute immunity for their judicial acts unless they act in clear absence of all jurisdiction." *Id.* at 966. The rationale for conferring such immunity is to free "the judicial process of

harassment or intimidation[.]" *Forrester v. White*, 484 U.S. 219, 226, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988); *see also International Union, UAW v. Greyhound Lines, Inc.*, 701 F.2d 1181, 1185 (6th Cir. 1983).

■ White does not dispute the extent of a judge's entitlement to immunity. Instead, he claims that because the seating of Special City Judge Bean was procedurally defective, Bean acted without authority or jurisdiction in binding White over to the grand jury as a material witness. The alleged procedural defect consisted of City Court Clerk Dotson's failure to follow laws requiring him to properly open court, hold an election for special judge, and swear Bean in as a special judge. White also relies on Bean's failure to sign city court minutes as support for his claim that Bean lacked judicial authority. We reject this claim noting that, notwithstanding the procedural defects in his seating, Special City Judge Bean, on the date in question, possessed the office of Special City Judge and was discharging the duties of that position under color of authority. Accordingly, Judge Bean was a *de facto* Special City Court Judge whose actions are recognized as valid in Tennessee. *See Ridout v. State*, 161 Tenn. 248, 30 S.W.2d 255 (1930). " 'A *de facto* officer is one who is in possession of an office, and discharging its duties, under color of authority.' " *Id.* at 256, 30 S.W.2d at 257 (quoting *State v. Oates*, 86 Wis. 634, 57 N.W. 296 (1893)). In conducting White's initial bond hearing and in binding him over to the grand jury as a material witness, Judge Bean was exercising a judicial function and was not acting in the absence of all jurisdiction. Accordingly, we conclude that the procedural errors inherent in Judge Bean's appointment do not render his judicial actions invalid or deprive him of absolute judicial immunity in connection with the discharge of his judicial duties.

---

**4.** Based on the Supreme Court's recent decision in *Canton v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), White urges this court to consider the city's liability for failing to

properly train its detectives. We decline to address this issue because it is raised for the first time on appeal. *Boone Coal and Timber Co. v. Polan*, 787 F.2d 1056 (6th Cir.1986).

■ For White to prevail on his section 1983 claim, he must demonstrate that the defendant(s) proximately caused his alleged injuries. *Tate v. Alexander*, 527 F.Supp. 796, 800 (M.D.Tenn.1981) (section 1983 liability is imposed only on individuals who directly or indirectly subject a person to a deprivation of his constitutional rights), *aff'd in part and vacated in part sub nom. Alexander v. Alexander*, 706 F.2d 751 (6th Cir.1983). In this case, although City Court Clerk Dotson may have been negligent in fulfilling the procedural requirements attendant to Judge Bean's appointment and assumption of judicial duties, we, like the district court, conclude that Dotson's conduct was not the proximate cause of White's incarceration. We are confident that the result in this case would not have been altered had Dotson complied with the procedural requirements governing Judge Bean's appointment and assumption of duties. Accordingly, the district court properly dismissed White's section 1983 claim against Dotson.

■ White's claim against Deputy City Court Clerk Connie King also was properly dismissed. Although White contends that King exceeded her authority by issuing a warrant for his arrest as a state's witness, setting his bail, and causing him to be incarcerated, the district court determined that White suffered no constitutional injury as a consequence of King's conduct. We agree. King's actions only affected White for the period beginning when he appeared before her until Judge Cox's initial bond hearing less than twenty-four hours later. Moreover, King's conduct in this case was authorized by and in accordance with Rule 5 of the Tennessee Rules of Criminal Procedure. That rule provides:

**Initial Appearance Before Magistrate.**—(a) In General.—Any person arrested except upon a capias pursuant to an indictment or presentment shall be taken without unnecessary delay before the nearest appropriate magistrate of the county from which the warrant for arrest issued, or the county in which the alleged offense occurred if the arrest was made without a warrant unless a citation is issued pursuant to Rule 3.5.

If a person arrested without a warrant is brought before a magistrate, an affidavit of complaint shall be filed forthwith.

In this case White was arrested without a warrant. The evidence reveals that when he was brought before King, she filed an affidavit of complaint against him. An affidavit of complaint is defined in Rule 3 of the Tennessee Rules of Criminal Procedure, which provides:

**The Affidavit of Complaint.**—The affidavit of complaint is a written statement alleging that a person has committed an offense and alleging the essential facts constituting the offense charged. The affidavit of complaint shall be made upon oath before a magistrate or a neutral and detached court clerk who is capable of the probable cause determination required by Rule 4.

The committee commentary to Rule 3 indicates that, like the issuance of an arrest warrant, the issuance of an affidavit of complaint is dependent upon a probable cause determination. The affidavit of complaint describes the "document upon which the issuance of the arrest warrant is based." Tenn.R.Crim.P. 3 comment. The facts reveal that King filed an affidavit of complaint, but not an arrest warrant. White was arrested by Angel at the murder scene before King ever saw him. King filed the affidavit of complaint, which listed "state's witness" beside the blank provided for the "offense." Although King indicated the basis for White's "offense" was his having witnessed Smith's murder, the affidavit was deficient because it lacked any assessment of the probability of White's future appearance and testimony at Denson's trial. We agree with the district court that this deficiency in the complaint was harmless in view of Angel's valid authority to arrest White as a material witness and in view of the fact that, within twenty-four hours of his arrest, White appeared before Judge Cox and was given the opportunity to make bail.

■ Contrary to White's assertions, King did not issue an arrest warrant for him. Moreover, even if King did set

White's bail,[5] she did so with authority and in accordance with the governing statute. *See* Tenn.Code Ann. §§ 40–11–105, –106, –107, –108, –110. Finally, even if King's conduct somehow proximately caused White's alleged constitutional injury, setting bail is a quasi-judicial activity. Accordingly, King would be entitled to absolute immunity in this action. *See Denman v. Leedy,* 479 F.2d 1097 (6th Cir.1973). For these reasons, White's claim against King properly was dismissed.

## IV.

White's final claims urge that (1) summary judgment was improper because of disputed and insufficient material facts; (2) the court erred in dismissing his pendent state claim; and (3) he was the subject of discrimination because of his homeless status. We address these claims briefly in disposing of them.

White's claim of disputed or insufficient material facts is based on his allegation that the City of Chattanooga maintains policies that impermissibly authorize city employees to violate his civil rights. White offers no support for this claim and offers no other disputed issues of fact. Instead, he urges that because Angel allegedly violated his civil rights, Angel's superior acquiesced in the violation in furtherance of an unconstitutional city policy. As noted, we have determined that Angel's conduct did not violate White's civil rights. This determination undermines White's allegations concerning an unconstitutional policy predicated on acquiescence in acts which we have concluded were both authorized and constitutional. White has not raised a genuine issue of material fact necessary to preclude a summary judgment ruling. White's pendent state claim is based on Judges Cox's and Bean's disregard of the principles of *Arrowood.* Even if we are incorrect in finding this case distinguishable from *Arrowood,* we still would conclude that White's pendent state claims appropriately were dismissed upon the proper dismissal of his federal claims. *See Foster,* 864 F.2d at 419 (citing *United Mine Work-*

ers *v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

Finally, White claims that his homelessness was the essential factual basis for the district court's determination that his arrest and detention was authorized. He contends that he was the victim of discrimination on the basis of his homelessness in violation of his substantive due process, equal protection, first amendment, and eighth amendment rights. As the record reveals, however, White was arrested and detained for important reasons beyond his homelessness, including his having witnessed a murder and his statement that he preferred not to be a "snitch" and testify against Denson. Although White's homelessness may have entered the calculus in the decision to detain him, we reject White's claim that the district court impermissibly grounded its probable cause determination on White's homelessness.

Although we certainly do not condone White's extended incarceration as a material witness, we find that his section 1983 and pendent state claims properly were dismissed. Accordingly, the district court's grant of summary judgment for the city defendants is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting in part.

Because I believe the finding of probable cause in this case is much more problematic than the court's analysis portrays, I dissent on the issue of probable cause to arrest and detain Clyde White.

The court correctly notes that White could not establish a constitutional violation ensuing from Officer Angel's actions because courts have not yet determined what constitutes probable cause to arrest and detain a material witness to a crime. However, one proposition should be apparent: the arrest and detention of a citizen as a material witness requires a showing of probable cause under the Fourth Amendment to the United States Constitution because under the Fourth Amendment "the essential element is the physical restraint

---

5. The district court judge, for the purpose of his opinion, assumed that King did set White's bail.

placed upon the person, not the purpose behind the restraint." *In re Bacon v. United States*, 449 F.2d 933, 942 (9th Cir. 1971). While this observation is insufficient to defeat Angel's qualified immunity, it is at least some admonition that the arrest and detention of a witness is an exceptional measure to be employed only in instances where voluntary cooperation appears unfeasible. Tennessee Code Annotated § 40–11–110 embodies the same limitation on the arrest and detention of a person as a material witness because under it a witness is to be detained only if he "has refused or will refuse to respond to process." In my view, the probable cause threshold in this case was not met.

Both the district court and this court have attributed substantial weight to White's statements that "he would like to not have to testify in the matter" and that he did not want to "snitch." These statements do not imply a refusal to testify. Few citizens would be undaunted by the thought of having to testify to the occurrence of a murder, and White's statements merely reflected his understandable fear of this prospect. Insofar as the court's opinion suggests that statements of the character made by White are indicia of probable cause to arrest and detain a witness, I cannot agree. Where a probable cause determination is predicated largely on a witness' statement of his willingness to testify, more than mere reticence to testify must be shown.

I recognize that Officer Angel and Chattanooga police authorities were faced with a difficult logistical problem because White was without a residence to which a subpoena could be sent. However, this circumstance only justified confining White to police quarters until alternative arrangements could be made for securing his testimony on the date of Denson's trial. White was not shown to have any affiliation with Denson, and there was no realistic chance of or motive for his fleeing the jurisdiction. Furthermore, White was no longer a suspect at the time he was taken into custody as a "state's witness." Under these circumstances, it was unnecessary to subject White, a mere witness, to the very same restrictive treatment accorded Denson, the person charged with murder. After questioning White, Chattanooga police authorities could have sought temporary shelter for him or made some other arrangement less restrictive than incarceration. While neither the statutes of Tennessee nor the United States Constitution currently mandates that less restrictive arrangements be made, had Officer Angel and his superiors taken actions of this sort, they would have negated the unavoidable perception that Clyde White was treated poorly because he was one of society's dispossessed.