**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0281n.06

**No. 12-3367**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Mar 21, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WILLIAM GALLOWAY, Personal Representative of the Estate of Steven Galloway, Deceased, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| THOMAS MARION ANUSZKIEWICZ; JEFF McCOLLISTER, Deputy, in his individual and official capacity; MARION PSYCHOLOGICAL, INC., | ) ) ) ) | |
| Defendants-Appellees. | ) ) | |

BEFORE:  SILER, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

William Galloway, the personal representative of Steven Galloway's estate, filed this lawsuit against eleven different defendants following his brother's suicide at the Stark County Jail in Ohio. The complaint alleged deliberate indifference and *Monell*[1] claims under federal law and a variety of related state-law claims.  After dismissing three defendants, the district court granted summary judgment in favor of the remaining defendants on all federal claims and dismissed without prejudice the state-law claims.  Galloway appeals only the grant of summary judgment to defendants Dr. Thomas Anuszkiewicz and Jeff McCollister on his 42 U.S.C. § 1983 claims alleging that they were

---

[1]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

deliberately indifferent to the decedent's serious medical needs in violation of the Eighth and Fourteenth Amendments. Finding no evidence from which a reasonable jury could conclude that Anuszkiewicz and McCollister were deliberately indifferent, we affirm.

I.

On June 1, 2008, the Canton Police Department arrested 51 year-old Steven Galloway for criminal trespass and resisting arrest. Galloway, unemployed and homeless, had a history of chronic, paranoid schizophrenia. The police brought him to the Stark County Jail. When an arrestee arrives at the jail, the medical staff screens that individual to determine whether admission into the jail is appropriate or whether outside medical or mental health treatment is required. Nurse Rick Blackwell performed Galloway's screening. During this process, Galloway argued with his right hand; resisted being screened; responded to a question about thoughts of self-harm by becoming agitated, pushing over a chair, and then walking away; accused Blackwell of working for "the people who were after him"; denied thoughts of suicide; and refused a TB test because he thought it was poison. Asked to explain a large blister on the index finger of his right hand, Galloway said, "it needed punishment and I handled it." Although Blackwell considered Galloway's behavior delusional, he admitted Galloway into the jail.

Galloway's admission was not without special conditions. Because no one from the jail's mental health staff was available during Galloway's intake screening, Blackwell placed Galloway on psychiatric seclusion precautions with observations for self-harm every fifteen minutes. Blackwell also ordered that Galloway be given a suicide precautions blanket and mattress, items

designed to reduce the risk of self-harm. At approximately 2:00 a.m. on June 2, under the above-described conditions, corrections officers placed Galloway in "D Section," the jail's mental health unit. Defendant Dr. Thomas Anuszkiewicz, the jail's psychologist and clinical director, approved nurse Blackwell's conditions via telephone at about 6:00 a.m. that morning. Later that day, after consulting a mental health assistant who personally evaluated Galloway and determined that he no longer exhibited paranoid behavior, Anuszkiewicz removed Galloway from psychiatric seclusion precautions and self-harm observations and instead placed him on observations every fifteen minutes for odd behavior. It also appears his precautions blanket and mattress were replaced with standard issue bedding.

While under observation, Galloway engaged in odd behavior. For example, on June 3, when Galloway approached his cell after being ordered to return from using the telephone, he struck what a corrections officer described as an "aggressive stance," showing his fingernails and breathing deeply. Other deputies responded to the scene, and Galloway returned to his cell without incident. Galloway also talked to himself or to people that were not present, made inappropriate comments at inappropriate times, and caused a disruption when he masturbated in front of other male inmates and nurses.

Anuszkiewicz and the jail's psychiatrist met with Galloway for an evaluation around 10:00 a.m. on June 4. Anuszkiewicz's treatment notes from this evaluation are not in the record. However, the record does show that after this meeting, Anuszkiewicz ordered corrections officers to take two blankets and a sheet from Galloway and give him a suicide precautions blanket. His

observational status was then changed from fifteen minute observations for odd behavior to fifteen minute observations for odd and aggressive behavior. Also, a comment was added to the daily mental health "blurb" sheet that Galloway should be approached with caution.

Defendant Jeff McCollister began a shift in the D Section at 2:00 p.m. on June 4. Galloway was the only inmate in the D Section on any form of observations when corrections officer McCollister began his shift. Sometime before 5:33 p.m., McCollister let Galloway out of his cell to use the steel-corded telephones in the rear of D Section. Prisoners on observations are permitted to use the telephone at the officer's discretion. McCollister subsequently saw Galloway on the phone twice between 5:33 p.m. and 6:05 p.m. Prison phone records, however, indicate that Galloway never dialed the telephone.

While Galloway was out of his cell near the telephones, McCollister left him alone and began a medication round with a nurse at 6:20 p.m. When McCollister and the nurse arrived at the rear of D Section, McCollister asked the nurse to wait outside of the housing section so that he could put Galloway back in his cell to keep him separated from the nurse. At 6:26 p.m., McCollister opened the door to the rear of D Section and observed Galloway lying against the wall with the telephone's steel cord wrapped around his neck. Emergency responders transported Galloway to a nearby hospital where he died on June 21, 2008.

As the personal representative of Steven Galloway's estate, plaintiff William Galloway brought a variety of federal and state-law claims against eleven different defendants as a result of his brother's suicide. The district court dismissed three defendants, granted summary judgment to

the remaining eight on all federal claims, and dismissed the state-law claims without prejudice. Galloway appeals only the grant of summary judgment in favor of defendants Anuszkiewicz and McCollister on his claims brought pursuant to 42 U.S.C. § 1983 alleging that they were deliberately indifferent to Steven Galloway's serious medical needs.

## II.

## A.

We review de novo a district court's grant of summary judgment. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007). "A mere scintilla of evidence is insufficient to create a material question of fact and defeat a motion for summary judgment; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Prison officials may be held civilly liable under § 1983 if they are deliberately indifferent to the serious medical needs of convicted prisoners or pretrial detainees. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The "deliberate indifference" standard of liability "has both an objective and a subjective component." *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006). The

objective component requires proof that a prisoner's medical need is "'sufficiently serious.'" *Id*. at 424 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires proof on three elements: (1) the prison official subjectively perceived facts from which to infer a substantial risk to the prisoner; (2) the official did in fact draw the inference; and (3) the official disregarded that risk. *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (internal quotation marks, brackets, and citation omitted).

In reviewing deliberate indifference claims in the prisoner-suicide context, this court has recognized that proof of a prisoner's psychological needs manifesting themselves in suicidal tendencies with "a strong likelihood that he would attempt to take his own life" are sufficiently serious for purposes of the objective component. *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) (internal quotation marks and citation omitted); *see also Perez*, 466 F.3d at 424. The subjective component is satisfied with proof that a prison official drew an inference from the available facts that there was a "strong likelihood" of prisoner suicide, but then disregarded that risk by failing to take adequate precautions to mitigate the risk. *Gray*, 399 F.3d at 616. Thus, to be held liable, "[a] prison official must be cognizant of the significant likelihood that [the detainee] may imminently seek to take his own life and must fail to take reasonable steps to prevent the [detainee] from performing this act." *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 416 (6th Cir. 2006) (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)).

Anuszkiewicz and McCollister do not dispute that Galloway has established the objective component of his deliberate indifference claim. Rather, they challenge his proofs on whether they each had subjectively perceived a strong likelihood of suicide, but failed to take reasonable precautions. We review the circumstances within each defendant's knowledge to determine if there is a genuine issue of material fact on the subjective component. *Gray*, 399 F.3d at 616.

B.

Galloway argues that there is a genuine issue of material fact whether Anuszkiewicz was deliberately indifferent because, although he issued a suicide precautions blanket to the decedent, he did so without expressly informing the jail staff of a suicide risk. Anuszkiewicz responds that no reasonable jury could find that his course of treatment violated the decedent's constitutional rights. We agree with Anuszkiewicz.

After Anuszkiewicz personally evaluated the decedent on June 4, he issued a suicide precautions blanket and ordered observations every fifteen minutes for odd and aggressive behavior. Galloway's theory of liability is that after this evaluation, Anuszkiewicz should have also directly warned the jail staff that he thought the decedent was suicidal. Though presented as a "failure to warn" claim, Galloway is essentially disagreeing with Anuszkiewicz's medical judgment that while the decedent required a precautions blanket and certain observations, he did not present a suicide risk that must be expressly communicated to the jail staff. Galloway's disagreement may be grounds for a state-law medical malpractice or wrongful death claim, but not a constitutional tort claim. *See Ruiz v. Martin*, 72 F. App'x 271, 276 (6th Cir. 2003) ("[F]ederal courts are reluctant to 'second guess

medical judgments and to constitutionalize claims' sounding in state tort law '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment.'" (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976))). Moreover, Dr. Knoll, Galloway's medical expert, offers no criticism of Anuszkiewicz's issuance of a precautions blanket without also changing the decedent's status to one reflecting self-harm concerns.

Even if we adopt Galloway's "failure to warn" theory of the case and assume that Anuszkiewicz perceived facts from which he drew an inference that the decedent exhibited a "strong likelihood" of suicide, we conclude that no reasonable jury could find that Anuszkiewicz deliberately disregarded that risk by not taking the extra step of informing the jail staff that he thought the decedent was suicidal. In reaching this conclusion, we reject Galloway's argument that *Perez* and *Cooper v. County of Washtenaw*, 222 F. App'x 459 (6th Cir. 2007), establish a brightline rule that once the first two elements of the subjective component are satisfied, only a jury can decide the third. No such rule exists in this circuit. The courts in *Perez* and *Cooper* applied the same well-settled summary judgment principles as we do in this case. And the facts here, unlike those in *Perez* and *Cooper*, show that the dispute on the third prong is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

Prison officials need only take reasonable precautions to prevent inmate suicide; they do not insure or guarantee the life of a prisoner. *See Danese v. Asman*, 875 F.2d 1239, 1245 (6th Cir. 1989) ("[N]either the plaintiffs nor the district court cite any cases holding that there exists a clearly established right to . . . suicide prevention facilities."); *Popham v. City of Talladega*, 908 F.2d 1561,

1564 (11th Cir. 1990) (per curiam) ("A prison custodian is not the guarantor of a prisoner's safety."). Even if a prison official has perceived a serious suicide risk, that official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted); *see also Luckert v. Dodge Cnty.*, 684 F.3d 808, 817–20 (8th Cir. 2012) (prison officials are not liable under Section 1983 for detainee's suicide where an objective review of the evidence shows that while their failures and actions may have constituted negligence, even possibly gross negligence, they did not rise to the level of deliberate indifference); *Jerauld ex rel. Robinson v. Carl*, 405 F. App'x 970, 979 (6th Cir. 2010) (no deliberate indifference liability because officials did not ignore or respond unreasonably to decedent's requests for help); *Minix v. Canarecci*, 597 F.3d 824, 830–34 (7th Cir. 2010) (though inmate committed suicide, it was not shown that the medical staff disregarded any subjective knowledge that the inmate would kill himself—the inmate had denied suicidal thoughts and appeared alert); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017–20 (9th Cir. 2010) (detainee's suicide did not give rise to a claim of deliberate indifference when detainee did not receive daily evaluations as required by suicide prevention policy, had been allowed to collect the gauze he hung himself with, had been downgraded in suicide watch status, and had not been checked on every 15 minutes as required under policy); *Estate of Novack*, 226 F.3d at 530 (no deliberate indifference liability where defendants were told that the decedent was a suicide risk and, after placing him in an observation cell for a couple of days, defendants placed him in the general prison population; defendants took some action, even though it was not successful).

Here, Anuszkiewicz took swift and responsible action to protect the decedent after his June 4 evaluation: he continued fifteen minute observations for odd behavior, added observations for aggressive behavior, expressly instructed the jail staff on the "blurb" sheet to approach the decedent with caution, and ordered that he be given a suicide precautions blanket. We are not persuaded that a constitutional violation arises simply because Anuszkiewicz did not also expressly communicate a specific level of suicide risk to the corrections officers. That he may have been able to further mitigate an already lowered risk by taking additional action does not give rise to deliberate indifference liability. *See Linden*, 167 F. App'x at 418. And although the ultimate harm was not avoided, in light of what Anuszkiewicz did to protect the decedent, we conclude that no rational jury could find that he possessed a sufficiently culpable state of mind—akin to an intent to punish—by not doing more. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005). Therefore, we affirm the grant of summary judgment in his favor.

## C.

Next, regarding defendant McCollister, the parties dispute whether he perceived facts from which he could draw the inference that there was a "strong likelihood" that the decedent was suicidal. Galloway argues that corrections officer McCollister had before him visual evidence that "could give rise" to the inference that the decedent was "at risk" for suicide: the decedent had a suicide precautions blanket and was under observation every fifteen minutes for odd and aggressive behavior. From this, Galloway concludes that McCollister had knowledge that the decedent presented "some level of risk" for self-harm. McCollister responds that nothing within his

knowledge demonstrated a "strong likelihood" that the decedent was suicidal: no one told him that the decedent was suicidal; a few hours before his shift, medical personnel evaluated the decedent and did not put him on suicide watch or observations for self harm; the decedent never harmed himself while at the jail; and he did not express suicidal thoughts to McCollister or anyone else. We agree with McCollister.

The subjective component asks whether a reasonable jury could find that McCollister, based on facts within his knowledge, drew the inference that there was a "strong likelihood" that the decedent was suicidal, but then disregarded that risk. *See Perez*, 466 F.3d at 424. Galloway's argument completely avoids this demanding standard. He argues that the first prong of the subjective component is satisfied if McCollister contemplated that the decedent "may be at risk" of suicide or presented "some level of risk." These are the wrong liability standards.

Reviewing Galloway's proofs through the correct standard, we conclude that no reasonable jury could find that McCollister perceived a "strong likelihood" that the decedent was suicidal. When McCollister reported for duty, the decedent was not on a formal suicide watch; he was on observations for odd behavior and aggression. McCollister is entitled to rely on the mental health staff's assessment—less than four hours prior—that the decedent did not require self-harm observations, nor warranted a suicide watch. *See Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004). Relatedly, the blurb sheets and officer logs prior to McCollister starting his shift did not note any suicidal behavior, McCollister did not hear the decedent making any threats against himself or anyone else, nor did he observe any such behavior.

The single objective sign that the decedent *may* or *could* have been considering suicide—a precautions blanket—does not reasonably lead to the conclusion that McCollister contemplated, but then disregarded, a *strong likelihood* of suicide. While precautions blankets are issued to prisoners who may be suicidal, they are also issued, we are told, for a variety of reasons unrelated to self-harm concerns, including preventing prisoners from blocking off the cell bars or stuffing the sheets down the toilet. In other words, the record does not show that the presence of a precautions blanket could *only* have signaled to McCollister a strong likelihood of suicide. *See Cooper*, 222 F. App'x at 469–70 (the ability to demonstrate a strong likelihood of suicide is undermined when there are other legitimate explanations for a jailer's action toward a decedent).

Further, assuming that a reasonable factfinder could conclude that McCollister had knowledge that the decedent *may* have been suicidal based on the precautions blanket, there remains no liability because it is not enough to establish that an official may have acted with deliberate indifference to some *possibility* of suicide, or even a *likelihood* of suicide; the test is a *strong likelihood* of suicide. This is a critical distinction because a finding of deliberate indifference requires a sufficiently culpable state of mind, which the Supreme Court has equated with criminal recklessness. *See Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 837). And here, the mere presence of the precautions blanket (the meaning of which is ambiguous), coupled with the absence of any objective manifestation of suicidal ideation, provides no basis from which a reasonable jury could conclude that McCollister perceived a strong likelihood of suicide before the telephone cord incident. *See Farmer,* 511 U.S. at 838 ("[A]n official's failure

to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). Accordingly, we affirm the grant of summary judgment in his favor.

III.

For these reasons, we affirm the judgment of the district court.