NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0155n.06

Case No. 23-3168

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SARA BATTON, administrator of the
estate of Tyler Witbeck, deceased,

    Plaintiff - Appellee,

v.

SANDUSKY COUNTY, OHIO, et al.,

    Defendants,

AARON T. HOSSLER, in his individual
capacity,

    Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Apr 05, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: BATCHELDER, CLAY, and GIBBONS, Circuit Judges.

GIBBONS, J., delivered the opinion of the court in which CLAY, J., joined. BATCHELDER, J. (pp. 16–20), delivered a separate dissenting opinion.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff Sara Batton, administrator of the estate of the decedent Tyler Witbeck, sued the City of Clyde, police officer Aaron Hossler, various Sandusky County entities, and jail employees for events leading to Witbeck's suicide while in custody. The City of Clyde and Hossler moved for judgment on the pleadings, with Hossler asserting a qualified immunity defense. The district court denied Hossler's qualified immunity defense as to Batton's deliberate indifference claim, finding that Batton alleged a plausible constitutional violation and then deferring its assessment of whether Hossler violated a clearly established right until after discovery. Hossler appealed. Because Batton plausibly alleged

Hossler's violation of a clearly established right, we affirm the district court's partial denial of Hossler's motion for judgment on the pleadings.

I.

On the morning of September 26, 2019, Tyler Witbeck called the Clyde Police Department for help opening his vehicle after locking his keys in his car. Officer Aaron Hossler answered the call and opened the vehicle. During this interaction, however, Hossler learned that Witbeck had an outstanding warrant in Cuyahoga County. Hossler accordingly arrested Witbeck and took him into custody. While Hossler detained Witbeck and transported him to Sandusky County Jail, he learned that Witbeck suffered from serious mental illnesses for which he required daily medication. During the detention, Hossler found the drugs Seroquel and Depakote. These drugs are prescribed only for serious mental health conditions, and missing dosages can increase the risk for suicide and other serious medical complications. Body camera footage indicated that Hossler seemed to place the Depakote prescription with Witbeck for Witbeck's later use in custody. During the transport, Hossler further witnessed Witbeck crying, talking to himself, and making despondent comments such as: "I'm done," "F- my life," and "I don't know how I feel right now." DE 1, Compl., Page ID 16–17, ¶ 45.

Once at the jail, Hossler did not deliver the medications to intake officers and did not inform jail officials of Witbeck's concerning behavior during the transport, his mental illness, or his need for medication. But, as Batton alleges, the intake officers as well as the medical staff tasked with caring for Witbeck appeared aware of Witbeck's need for psychiatric medication. Hossler remained on the scene during Witbeck's intake interview. Various staff at the jail then left Witbeck in an isolated cell for hours without checking on him at regular intervals. Later that same day, Witbeck was found hanging in his cell and pronounced dead.

Batton sued in 2021, alleging constitutional claims against the City of Clyde, Sandusky County, and various officials concerning Witbeck's death. As relevant to this appeal, Batton alleged that Hossler's failure to convey information concerning Witbeck's distressing behavior and serious need for medication after learning of Witbeck's mental illness and witnessing him demonstrate signs consistent with suicide constituted deliberate indifference in violation of the Fourteenth Amendment.

Hossler and the City of Clyde moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Hossler asserted a qualified immunity defense, which the district court rejected as to the deliberate indifference claim. While deeming it "a close call," the district court found that Batton alleged a plausible constitutional violation. DE 51, Mem. Op. & Order, Page ID 267–68. Specifically, the district court determined that Batton alleged facts "to plausibly support a claim that Hossler was in possession of sufficient facts from which he did or should have inferred Mr. Witbeck's suicidal state." *Id.* at Page ID 268. In light of Hossler's alleged failure to convey Witbeck's medications and the information he observed about Witbeck's state to jail officials, the district court deemed Batton entitled to discovery to resolve whether Witbeck acted with deliberate indifference by failing to take steps to ameliorate that risk.

After deeming a constitutional violation plausibly alleged, the district court determined not to continue with an analysis of whether the constitutional right was clearly established. Instead, the district court cited case law illustrating this circuit's reluctance to grant qualified immunity on the pleadings, especially when a plausible constitutional violation has already been alleged. The district court resolved to "defer [its] ruling on qualified immunity until further facts have been developed." *Id.* at Page ID 269. The court accordingly denied Hossler's motion for judgment on the pleadings on this basis.

II.

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment after the close of the pleadings. Fed. R. Civ. P. 12(c). We review a district court's ruling on a Rule 12(c) motion de novo "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (quoting *Moore, Successor Tr. of Clarence M. Moore & Laura P. Moore Tr. v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021)). At this stage, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true," although the court need not accept "legal conclusions or unwarranted factual inferences." *Id.* (quoting *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).

To overcome a defense of qualified immunity raised at the 12(c) stage, a plaintiff must allege facts plausibly demonstrating "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Marvaso*, 971 F.3d at 605 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Granting qualified immunity before discovery is "usually disfavored." *Id.* (listing cases discussing qualified immunity at the motion to dismiss stage). This general preference against granting qualified immunity before discovery is particular to the second stage of the inquiry—whether the right was clearly established. *Myers v. City of Centerville*, 41 F.4th 746, 758–59 (6th Cir. 2022) (citing cases detailing this preference). But even when determining whether a right is clearly established, the validity of a qualified immunity defense "may be apparent from the face of the complaint, rendering a motion [for judgment on the pleadings] appropriate." *Id.* at 757–58 (quoting *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021)) (alteration in original). This circuit has thus simultaneously recognized both that assessment of the clearly established prong is difficult at the

Rule 12 stage because the "inquiry may turn on case-specific details that must be fleshed out in discovery," *Crawford*, 15 F.4th at 765, and that district courts have "a duty to address" qualified immunity defenses when properly raised before discovery, *Myers*, 41 F.4th at 758 (quoting *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004)). *See also Moderwell*, 997 F.3d at 659–61. Timely assessment of a qualified immunity defense is important because "qualified immunity shields government defendants not merely from liability, but also from litigation and discovery." *Myers*, 41 F.4th at 758 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982); *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987)). Nonetheless, while qualified immunity should "be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Moderwell*, 997 F.3d at 660 (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (cleaned up)).

## III.

Pretrial detainees enjoy a "right to adequate medical care" under the Fourteenth Amendment. *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (quoting *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)). A government official violates this right by acting with "deliberate indifference" to the detainee's "serious medical needs." *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Mirroring the Eighth Amendment, this deliberate indifference inquiry contains both an objective and subjective component. *Id.* Accordingly, a plaintiff can make out a deliberate indifference claim under the Fourteenth Amendment by first alleging that the detainee's medical need was "sufficiently serious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (detailing the objective component). Second, under prior caselaw, the plaintiff had to show that the official "subjectively perceived facts from which to infer substantial risk to the [detainee], that he did in fact draw the inference, and that he then disregarded that risk."

*Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *Parsons v. Caruso*, 491 F. App'x 597, 602 (6th Cir. 2012).  This presents a high bar, as "[i]t is not enough that an official 'fail[s] to alleviate a significant risk that he should have perceived but did not.'"  *Parsons*, 491 F. App'x at 602 (quoting *Farmer*, 511 U.S. at 838) (second alteration in original).  In the context of a detainee's suicide, the circumstances must make obvious a "strong likelihood" that the detainee would attempt to commit suicide.  *Downard*, 968 F.3d at 600 (quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005)); *Barber v. City of Salem*, 953 F.2d 232, 239–40 (6th Cir. 1992).

In response to recent Supreme Court precedent, however, this circuit has modified the subjective component of the deliberate indifference inquiry for pretrial detainees.  *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (explaining the divergence in the Fourteenth and Eighth Amendment analysis articulated in *Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021) in response to *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).  After *Brawner*, the subjective element has been modified to "lower the subjective component from actual knowledge to recklessness."  *Id*.  So, a plaintiff making out a deliberate indifference claim under the Fourteenth Amendment must now show: (1) that the detainee possessed a sufficiently serious medical need; and (2) that the officer "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Id*. at 317 (quoting *Brawner*, 14 F.4th at 596) (alteration in original).[1]

---

[1] Here, the district court noted that neither party attempted to apply the new standard at the district court level.  On appeal, the parties likewise cite to pre-*Brawner* cases assessing the obviousness of Witbeck's suicidal tendencies.  Indeed, it does not appear that this circuit has addressed the risk of suicide necessary for a plaintiff to make out a deliberate indifference claim under the Fourteenth Amendment post-*Brawner*.  Because the obviousness of a risk of suicide remains central to a finding of an officer's reckless disregard of that risk, these cases seem to remain relevant under the new standard.  *See, e.g.*, *Downard*, 968 F.3d at 600 (requiring that a detainee's behavior make obvious a strong likelihood of suicide).  But the shift in analysis post-*Brawner* appears to make it easier for a plaintiff to make out this claim, as "[r]eckless inaction in the face of [an] obvious need

Here, the district court determined that Batton plausibly alleged that Witbeck's behavior demonstrated a strong likelihood of suicide so that Hossler did or should have perceived that risk, and that Hossler then acted with deliberate indifference in his failure to pass on information and medications to jail officials to ameliorate that risk. The court first assumed without deciding that Witbeck's mental illnesses manifesting in suicidal tendencies were sufficiently serious to satisfy the first prong of a deliberate indifference claim. This assumption finds support in this circuit's case law, *see, e.g., Mantell v. Health Pro. Ltd.*, 612 F. App'x 302, 306 (6th Cir. 2015), and the parties do not focus on this component.

Instead, Hossler challenges the district court's finding as to the second component. Hossler contends that Witbeck's mental illness and behavior during the transport did not make obvious a *strong* likelihood, as opposed to just "some possibility . . . or even a likelihood of suicide" to render Hossler's failure to act as deliberately indifferent to Witbeck's serious medical needs. CA6 R. 16, Appellant Br., at 15–17 (quoting *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013)).

This circuit creates a high bar in suicide cases and "typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Downard*, 968 F.3d at 601. In this vein, courts have

---

is enough to proceed to a jury under *Brawner*." *See Helphenstine*, 60 F.4th at 319–20 ("We have held that similar facts were enough to establish a constitutional violation under the pre-*Brawner* standard, so they are certainly enough to defeat summary judgment now."). Accordingly, we cite to pre-*Brawner* case law assessing whether a detainee's actions made obvious a strong likelihood that the detainee would attempt suicide but note that the shift to recklessness indicates a lessened showing that a detainee plaintiff must make in this context. But, while we note this change in legal landscape concerning the constitutional violation, we continue to apply the law as it existed in 2019—when the conduct occurred—to determine whether any constitutional violation was clearly established at the time. *See Lawler ex rel. Lawler v. Hardeman Cnty.*, 93 F.4th 919, 927–28 (6th Cir. 2024).

deemed general despondency or unhappiness associated with being arrested insufficient to show a strong likelihood of suicide. *See Barber*, 953 F.2d at 239–40 (decedent's concern over his job, engagement, and potential loss of custody of his child after DUI arrest not "abnormal" and did not alert officials to strong likelihood of suicide); *Criswell v. Wayne Ctny.*, 165 F.3d 26, 1998 WL 598739, at *4 (6th Cir. 1998) (table) (per curiam) ("'[N]ormal' unhappiness does not establish a strong likelihood to commit suicide."). Similarly, despondency paired with other stressors like drug withdrawal or even threats of suicide may not demonstrate a strong likelihood of suicide when the detainee's other conduct or statements indicate that he is not suicidal. *See Mantell*, 612 F. App'x at 306–07 (detainee's suicidal history and report to jail official that detainee was suicidal did not generate strong likelihood when detainee otherwise displayed a "calm, compliant demeanor and denied any desire to harm or kill himself"); *Baker-Schneider v. Napoleon*, 769 F. App'x 189, 193–94 (6th Cir. 2019) (detainee's crying and display of symptoms associated with drug withdrawal did not create strong likelihood where detainee did not say that he was suicidal); *Nallani v. Wayne Cnty.*, 665 F. App'x 498, 507–08 (6th Cir. 2016) (detainee's previous suicidal statements, history of suicide, and known failure to take anti-depressant did not create strong likelihood where detainee otherwise denied being suicidal).

Hossler and the dissent argue that the facts as alleged by Batton bring this case within the above camp, as Witbeck's generally despondent comments did not evince a strong likelihood that he would commit suicide. While it is uncertain that Batton can ultimately make out a constitutional violation, her complaint does not fail at this stage for two reasons. First, many of the above cases involved not only behavior demonstrating despondency and mental instability, but also subsequent conduct or statements by the detainee disclaiming that the detainee was in fact suicidal. *See Downard*, 968 F.3d at 601–02; *Mantell*, 612 F. App'x at 306–07; *Baker-Schneider*, 769 F. App'x

at 193–94; *Nallani*, 665 F. App'x at 507–08; *see also Lawler*, 93 F.4th at 931 (detainee was upbeat during intake and informed jailer that he was not currently experiencing drug withdrawal and not currently suicidal). Here, in contrast, nothing in the complaint indicates that Witbeck subsequently displayed a calm demeanor or that he told Hossler or other officials that he was not in fact suicidal. We thus have no information at this stage to dispel inferences of suicide conveyed by his previous behavior of crying, talking to himself, making comments indicating despair, and Hossler's knowledge that Witbeck suffered from serious mental illness.

Second, the facts known to Hossler included not only Witbeck displaying behavior indicating that he was agitated and distressed, but also Witbeck's serious mental illness as evidenced by the medications discovered by Hossler. Not only could this indicate that Witbeck would deteriorate if he went off this medication, but the medication serves as a further proxy for Witbeck's serious mental instability. This second inference distinguishes the import of Witbeck's medication from other substances the court has deemed insufficient to generate a strong likelihood of suicide. *Cf. Baker-Schneider*, 769 F. App'x at 193–94 (symptoms of drug withdrawal did not generate strong likelihood). These distinctions demonstrate that Batton plausibly alleged facts making obvious a strong likelihood that Witbeck could attempt suicide. *See Troutman v. Louisville Metro. Dep't. of Corr.*, 979 F.3d 472, 484–86 (6th Cir. 2020) (finding genuine dispute of fact as to whether decedent's behavior demonstrated strong likelihood that he would attempt suicide).

Further, the complaint plausibly alleges that Hossler acted unreasonably in failing to ensure that Witbeck had access to his medications in jail and in failing to inform jail officials of Witbeck's concerning behavior during the transport, his serious mental illness, and his need for medication. While the complaint alleges that jail officials generally knew of Witbeck's mental illness, the complaint also alleges that Hossler failed to convey information he learned during the transport

about Witbeck's current state and failed to provide at least one medication for Witbeck's use in jail. *See Jackson v. Wilkins*, 517 F. App'x 311, 319 (6th Cir. 2013) (officer disregarded risks presented by medical need of detainee by failing to inform supervising official or jail employees of the extent of detainee's injuries). For these reasons, the district court did not err in determining that Hossler's failure to convey information concerning Witbeck's serious mental illness, need for medication, and self-deprecating comments as well as his crying and talking to himself during transport demonstrated deliberate indifference to Witbeck's serious medical needs.

Next, qualified immunity necessitates that Batton allege the violation of a right that was clearly established at the time. The clearly established component requires that the contours of a right be "sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In this vein, the clearly established law must be "particularized" to the circumstances of the case. *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson*, 483 U.S. at 640). Although the plaintiff need not point to a case directly on point, "existing precedent must have placed the . . . question beyond debate." *Mullinex v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 741).

This circuit has emphasized that when assessing a motion for judgment on the pleadings, a district court must, as "in every other case in which a defendant timely raises qualified immunity, . . . determine whether [the plaintiff] plausibly alleged a constitutional violation and, if so, whether that right was clearly established." *Myers*, 41 F.4th at 759. In skipping over the clearly established component, the district court failed to heed this command. But this panel has reviewed the pleadings de novo and finds that the denial of qualified immunity was nonetheless appropriate, as Batton plausibly alleged that Hossler violated a clearly established right. *See id.* (affirming

denial of qualified immunity based on panel's own review of the pleadings after the district court failed to analyze the issue). This conclusion comports with this circuit's preference against dismissing a complaint based on a determination that the alleged violation of the right was not clearly established at the time. *See id.* at 758–59; *Moderwell*, 997 F.3d at 660. And because the clearly established inquiry here turns on "case-specific details that must be fleshed out in discovery," the preference against granting qualified immunity on the pleadings is applicable. *Myers*, 41 F.4th at 758 (quoting *Crawford*, 15 F.4th at 765).

Hossler argues that Batton has failed to carry her burden of demonstrating that Hossler violated a clearly established right because Batton has not identified a case deeming an *arresting officer* responsible for inaction taken by jail officials after a detainee's transfer of custody. But Hossler's argument misunderstands Batton's claim. Batton alleges that Hossler acted with deliberate indifference to Witbeck's serious medical needs in violation of the Fourteenth Amendment by not conveying the information Hossler learned during the transport pertaining to Witbeck's medication, serious mental illness, and concerning behavior to jail officials during the transfer of custody.

This circuit has applied the same deliberate indifference standard to determine whether a detainee's right to adequate medical care has been violated by arresting officers and jail officials alike. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 796–99 (6th Cir. 2005) (reversing summary judgment in favor of arresting and booking officer made aware of the detainee's immediate need for insulin and who failed to address that need); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244–45 (1983) (highlighting that injured detainees enjoy a right to medical care under the Fourteenth Amendment and noting that, in the municipal liability context, the government satisfied its obligation by taking an arrestee to the hospital rather than jail). For

example, this circuit has granted qualified immunity to arresting officers because the evidence did not demonstrate that they acted with deliberate indifference to a serious medical need under the circumstances. *See, e.g.*, *Spears v. Ruth*, 589 F.3d 249, 255–56 (6th Cir. 2009) (deeming arresting officer not deliberately indifferent at summary judgment stage for her failure to convey to paramedics and jail officials that the detainee ingested drugs, and citing other case law assessing the liability of arresting officers); *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 993 (6th Cir. 2017) (granting qualified immunity to arresting officers who passed on the detainee's medication and informed the jailers of concerning behavior during the arrest). These rulings were not dependent on defendant's status as an arresting officer. Here, in contrast, Batton alleged facts that plausibly demonstrate that Hossler acted with deliberate indifference to Witbeck's medical needs.

In addition, this circuit has previously held that an arresting officer can violate the Fourteenth Amendment by failing to pass on information to intake officers in the face of a detainee's suicidal behavior. *See Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 407–10 (6th Cir. 2015). In *Bonner-Turner*, the court deemed qualified immunity inappropriate on a deliberate indifference claim against two officers that assisted in the transport of a suicidal man to jail. The officers were informed that the decedent had recently been released from a mental hospital, suffered from bi-polar disorder, was unmedicated, agitated, and suicidal at the time of his interaction with the police. *Id*. at 409–10. A reasonable juror could find that the officers disregarded this risk of suicide by, among other things, failing to take the decedent to the hospital rather than jail and failing to inform jail officials of the decedent's mental health history, risk of suicide, or self-harming behavior exhibited while in the patrol car. *Id*.

Similarly, this circuit has deemed detainees' rights to adequate medical care violated by arresting officers that failed to address or convey the detainees' known medical needs or injuries to appropriate jail officials. *See Jackson*, 517 F. App'x at 319 (rejecting summary judgment in favor of police officer that witnessed a detainee suffer serious injuries and then failed to inform his shift commander and jail officials of those injuries); *Garretson*, 407 F.3d at 794, 796–99 (denying summary judgment for arresting and booking officer who failed to "make arrangements" to address detainee's need for insulin). Hossler is correct that the lone case Batton cites for clearly establishing a detainee's right to have known medical needs provided for, *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018), is factually distinct.[2] Thus, Batton has not done much to help her cause. But Hossler's basis for distinguishing *Huq*—the absence of a violation by an arresting officer rather than a medical professional—is present in *Bonner-Turner* (failure to provide care or inform others in the suicide context), *Jackson* (known injuries context), and *Garretson* (prescription context).[3]

And in this circuit, "ample case law teaches that deliberate indifference toward a detainee's suicidal tendencies is a violation of Constitutional rights." *Moderwell*, 997 F.3d at 665 (quoting *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 425 (6th Cir. 2006) (listing cases)); *Comstock*, 273

---

[2] Batton actually cites *Richmond v. Hug* [sic.], 879 F.3d 178, 188 (6th Cir. 2018). But this case was superseded by *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018), and we thus refer to the latter.

[3] Although this circuit has held that unpublished law does not clearly establish a right for qualified immunity purposes, *see Bell v. City of Southfield*, 37 F.4th 362, 367–68 (6th Cir. 2022), unpublished case law in this context reinforces published case law demonstrating that Hossler's point of distinction—his status as an arresting officer rather than jail official—is not dispositive in the deliberate indifference inquiry, as this circuit has analyzed deliberate indifference claims concerning arresting officers and jail officials alike in the suicide and medical-needs contexts. And although in discussion of municipal liability, the Supreme Court has noted that injured individuals in the custody of arresting officers, rather than jail officials, enjoy a constitutional right to adequate medical care. *See Revere*, 463 U.S. at 244–45.

F.3d at 711 (citing cases "recogniz[ing] a prisoner's established right to medical attention once the prisoner's suicidal tendencies are known"). Similarly, "a pre-trial detainee's right to medical treatment for a serious medical need" has long been established. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) (denying qualified immunity for official who knew detainee exhibited signs of a heart attack but failed to inform his replacement of the detainee's illness or need for hospitalization). And prior to 2019, this circuit had established that right in a way that would have put reasonable officers similarly situated to Hossler on notice that their failure to respond appropriately to signs of suicide or obvious needs for medication could violate the Constitution. *See Garretson*, 407 F.3d at 798–99 (officer failure to pass on information of need for treatment); *Carter*, 408 F.3d at 313 (officer failure to pass on illness and need for hospitalization); *Bonner-Turner*, 627 F. App'x at 407–10 (officer failure to convey observed signs of suicide to jail officials). To be sure, it is far from clear that Batton will ultimately succeed on her constitutional claim against Hossler. Deliberate indifferent claims are particularly fact-specific; factual developments uncovered during discovery may make or break Batton's claim and may enable a full determination of whether the violation falls squarely within clearly established law. *See Myers*, 41 F.4th 758–59. For example, discovery will illuminate more details about the conspicuousness of Witbeck's behavior during the transport to the jail, the fate of the Witbeck's medications, and the actions Hossler took at the jail during the transfer of custody. But at this stage, Batton has met her burden by plausibly alleging a violation of clearly established constitutional law. *See Moderwell*, 997 F.3d at 665–66 (deeming dismissal of deliberate indifference claim based on clearly established analysis inappropriate due to need for "factual development").

IV.

As required at this stage, Batton plausibly alleged Hossler's violation of a clearly established right.  We thus affirm the district court's denial of qualified immunity.

ALICE M. BATCHELDER, Circuit Judge, dissenting. Qualified immunity "shields government defendants not merely from liability, but also from litigation and discovery." *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 758 (6th Cir. 2022). Because it shields government defendants from discovery, district courts have "a duty to address" a qualified-immunity defense raised before discovery. *Id.* (citation omitted). I agree with the majority that the district court had a duty to evaluate Officer Aaron Hossler's properly raised qualified-immunity defense. But I disagree with the majority's holding that Sara Batton makes allegations sufficient to overcome Officer Hossler's qualified immunity. The allegations against him amount—at most—to negligence. But a deliberate-indifference claim requires alleging that Officer Hossler acted with "obduracy or wantonness," not merely negligence. *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 777 (6th Cir. 2012) (citation omitted). For this reason, I respectfully dissent.

Batton's complaint does not allege facts sufficient to show that Officer Hossler violated one of Tyler Witbeck's clearly established constitutional rights. First, the information available to Officer Hossler—viewed as [] in the complaint and in the light most favorable to Batton—falls far short of demonstrating that Witbeck had a "'*strong likelihood* of suicide," instead of "some *possibility* of suicide, or even a *likelihood* of suicide." *Downard ex rel. Estate of Downard v. Martin*, 968 F.3d 594, 601 (6th Cir. 2020) (quoting *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013)) (collecting cases). And second, our precedent does not clearly establish that Witbeck's behavior would put a reasonable arresting officer in these circumstances on notice that the Constitution required him to convey to the jail booking staff—otherwise responsible for Witbeck's psychological intake evaluation—his personal (layman's) assessment of Witbeck's psychological behavior. In fact, it says the opposite. *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 993 (6th Cir. 2017).

Consider first whether Witbeck's behavior demonstrated a "*strong likelihood* of suicide." *Downard*, 968 F.3d at 601 (citation omitted). We have stated that this "high bar . . . typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Id.* The complaint never alleges that Witbeck did any of those three things. It certainly never alleges that Witbeck was on suicide watch. And it never alleges that he previously attempted suicide under similar conditions. The closest it gets to Witbeck's expressing a desire to self-harm is generic statements of despondency—yet we have held that "despondence following an arrest is normal and does not suggest a 'strong likelihood' of suicide." *Id.* (citation omitted). Witbeck allegedly stated while crying, "I'm done," "F- my life," and "I don't know how I feel right now." Compl., R.1, PageID#16. Which of these statements would have alerted Officer Hossler that Witbeck demonstrated a *strong* likelihood of suicide? The answer is none. These statements—individually or all three in tandem—are exactly the type of frustrated or exasperated statements that one could envision any arrestee uttering. They express despondency, not a desire to self-harm. And despondency is not enough to demonstrate a strong likelihood of suicide. *Downard*, 968 F.3d at 601.

Witbeck's psychiatric medications do not tip the scales. At best, the prescribed Seroquel and Depakote indicate that Witbeck belongs to a "high-risk group." But Witbeck's "membership in a high-risk group does not alone make it obvious that he will attempt suicide." *Id.* (collecting cases). Consider a recent example. The estate of a pretrial detainee who died by suicide argued that a booking officer should have known of his suicide risk because he "suffered from bipolar disorder," "was on oxycodone and Xanax (among other medications)," "had experienced drug and alcohol withdrawals in the past," and "had once suffered a head injury that required

hospitalization." *Lawler ex rel. Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919, 931 (6th Cir. 2024). Even though the booking officer knew all this information, the court determined that precedent "forecloses any reliance on these generic risk factors." *Id.* It does not matter that Witbeck may have "'fit[] the profile' of those who generally pose suicide risks." *Id.* (citation omitted). Batton must—at a minimum—allege "evidence that [Hossler] knew of more 'specific' facts showing a particular inmate's high suicide risk." *Id.* at 932.[1] In other words, the importance of Witbeck's medications goes to the objective, not subjective, element. *See id.*[2] A detainee's having prescriptions for Seroquel and Depakote does not establish that he presents a strong likelihood of suicide. In fact, the medications may just as readily show that the psychiatric condition is well-controlled. What matters to Officer Hossler's qualified-immunity defense is the "'specific' facts" relevant to Witbeck's suicide risk, not "generic risk factors." *Id.* at 931–32. Moreover, it is not even clear that an officer should be expected to recognize the medical uses of Seroquel and Depakote.

Even if Witbeck's despondent comments could show suicidal ideation, the complaint alleges that the booking officials "were aware [Witbeck] took and needed serious psychiatric medications daily." Compl., R.1, PageID#17. This allegation severs the causal chain between Officer Hossler's actions and Witbeck's death by suicide. Causation is "[o]ne of the basic elements of a § 1983 claim," and causation for § 1983 claims is "'no different from causation in the common law sense.'" *White v. Bell*, 656 F. App'x 745, 747 (6th Cir. 2016) (quoting *McKinley v. City of*

---

[1] The *Lawler* Court used "inmate" here to refer to a pretrial detainee. *See Lawler*, 93 F.4th at 922.

[2] As the majority notes, our court determined that the clearly established prong of our qualified immunity test requires that we assess "only the legal rules existing when 'the challenged conduct' occurred, not legal rules adopted by later caselaw." *Lawler*, 93 F.4th. at 926 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (collecting cases). Since Officer Hossler's conduct occurred before the 2021 change, it requires using our old subjective-component test.

*Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005)). Batton must allege (and later show) that Officer Hossler's actions "proximately caused [Witbeck's] alleged injuries." *White ex rel. Swafford v. Gerbitz*, 892 F.2d 457, 463 (6th Cir. 1989). But because jail staff was aware of Witbeck's psychological condition, "the result in this case would not have been altered" even if Officer Hossler had informed them of his personal view of Witbeck's medical needs. *Id.* Officer Hossler's action (or lack thereof) was not the proximate cause of Witbeck's injury.

Our precedent contains an illuminating example. In *Arrington-Bey*, the arresting officers "perceived that [the pre-trial detainee] was mentally unstable," "collect[ed his] pills," "note[d] his aggressive behavior" and a statement from a family member that he was "bipolar and off his medication," and "inform[ed] the jailers" of this. 858 F.3d at 993. Our circuit held that, even as to a "mentally unstable" pretrial detainee, the arresting officer who delivers him to the jail "ha[s] no reason to doubt that reasonable procedures would be used at that point." *Id.* Here, Witbeck's actions do not raise nearly the same level of concern as the behavior in *Arrington-Bey*. And at any rate, the complaint specifically alleges that the booking officers knew of Witbeck's medical needs—and that Officer Hossler knew that they knew, given that he was present during at least part of Witbeck's intake. Since Batton specifically alleges that the jail was already aware of Witbeck's medical needs, our precedent allows Officer Hossler to rely on the jail's following of reasonable procedures that would handle Witbeck's condition from there.

In summary, what Officer Hossler observed of Witbeck's behavior is insufficient to establish that Witbeck presented a strong likelihood of suicide instead of merely being in an at-risk group. The allegations against him sound—at most—in negligence, not deliberate indifference. Because the complaint alleges that the jail knew of Witbeck's medical needs,

our precedent entitles Officer Hossler to rely on the jail's following reasonable procedures.  For these reasons, I respectfully dissent.